UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STUART DINGMAN and
VIRGINIA DINGMAN,

    Plaintiffs,

vs.                                                                                     Case No. 11-15706

ONEWEST BANK, FSB.,                                     HON. AVERN COHN

    Defendant.
_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
## (Doc. 5)
## AND
## DISMISSING CASE[1]

### I. Introduction

This is another of one of many cases pending in this district involving a default on a mortgage and the commencement of foreclosure proceedings. Plaintiffs Stuart and Victoria Dingman are suing defendant One West Bank, FSB (OneWest) making multiple claims relating to their mortgage and the foreclosure proceedings. The complaint alleges eight counts, phrased by the plaintiffs as follows:

    Count I - Violation of MCL § 600.3205a

    Count II - Misrepresentation and/or Fraud

    Count III - Deceptive Act and/or Unfair Practice

    Count IV - Quiet Title

---

[1]Although originally scheduled for hearing, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

   Count V - Unjust Enrichment

   Count VI - Innocent/Negligent Misrepresentation

   Count VII - Fraud Based upon Silent Fraud and Bad Faith Promises

   Count VIII - Constructive Trust

Before the Court is OneWest's motion to dismiss under Fed. R. Civ. P. 12(b)(6), and for sanctions under Fed. R. Civ. P (11).[2]  For the reasons that follow, the motion will be granted.

## II.  Background

### A.  The Note and Mortgage

On June 22, 2007, plaintiffs, individually and as the "Trustee of the Virginia Dingman Trust Agreement" executed an adjustable-rate note in favor of IndyMac Bank, F.S.B. ("IndyMac") in the amount of $625,000.00.  The note was executed in connection with plaintiffs' purchase of the property at issue, commonly known as 11480 Monterey Drive, Belleville, MI 48111.  On June 22, 2007, plaintiffs also executed a Mortgage in which IndyMac is the named lender and Mortgage Electronic Registration Systems, Inc. ("MERS") is named as the mortgagee "solely as a nominee for Lender and Lender's successors and assigns."  On August 9, 2007, the mortgage was recorded with the Wayne County Register of Deeds.

  On July 11, 2008, the FDIC was appointed as Receiver for IndyMac, pursuant to 12 U.S.C. §1464(d)(2)(A) and §1821(c)(5), and took charge of the assets and affairs of

---

[2]The motion for sanctions is based on One West's argument that "Plaintiffs have filed a generic complaint which seeks to starve off the eviction process by alleging meritless claims."  In light of the dismissal under Rule 12(b)(6), the Court in its discretion declines to address Rule 11.

IndyMac. OneWest later purchased certain assets and servicing rights from the FDIC.

On March 11, 2009, MERS assigned the mortgage to IndyMac. The assignment was recorded on March 25, 2009.

On June 14, 2010, the mortgage was assigned to OneWest. The assignment was recorded on February 23, 2011.

### B. Plaintiffs' Default

Plaintiffs became late in making their mortgage payments in 2009. IndyMac, however permitted plaintiffs to execute a forbearance agreement dated March 17, 2009. The forbearance agreement provided that "Upon default … Indymac … retains the right to terminate this agreement, to demand immediate payment … and to resume collections and/or foreclosure at the point the servicing was previously suspended without further notice."

By June of 2009, plaintiffs had not made the required payments and were therefore in default of the forbearance agreement and the note. On July 7, 2009, the servicer of the loan, IndyMac Mortgage Services ("IndyMac Services"), a division of OneWest, notified plaintiffs that they had "fallen behind on your mortgage payments" and that "depending on your financial circumstances" plaintiffs may qualify for "one or more of the following loss mitigations options" which included a loan modification.

Plaintiffs applied for a loan modification. Despite plaintiffs' allegations that they "were never formally advised that the loan modification was denied" and "never received a denial letter or any other written response to the loan modification request," IndyMac Services notified plaintiffs on October 6, 2009 that "… we cannot accommodate your request for a loan modification." IndyMac Services gave additional

3

notice to the plaintiffs via letter dated November 20, 2009 stating, in part, that "Unfortunately, based on the financial information you provided to us, you do not qualify for a HAMP loan modification."

OneWest then communicated directly with plaintiffs, sending numerous letters requesting information and documents necessary to determine the plaintiffs' eligibility for a loan modification. According to OneWest, plaintiffs did not submit the required information and documentation despite correspondence sent to them on the following dates: November 17, 2009; December 15, 2009; June 9, 2010; June 15, 2010; July 22, 2010; August 11, 2010; September 8, 2010; November 15, 2010; and November 29, 2010.

After failing to provide the necessary information and documents for more than a year, plaintiffs were informed on December 14, 2010 that "We are unable to offer you a Home Affordable Modification because you did not provide us with the documents requested." A subsequent notice was sent on February 28, 2011 in which plaintiffs were informed that "Based on the documentation you have provided and attached calculations, we find that you are ineligible for a loan modification based on your current income and expenses."

### C. Foreclosure Proceedings

OneWest, as the owner of the indebtedness, began foreclosure proceedings. OneWest first gave plaintiffs notice of default. The statutory notice of legal rights was mailed to plaintiffs on November 30, 2010 via First Class Mail, and First Class Mail Return-Receipt Requested. The notice included a list of the names, addresses and telephone numbers of approved housing counselors. OneWest's designate agent,

Randall S. Miller & Associates, determined that plaintiffs were not eligible for a loan modification based upon the information and documents submitted by plaintiffs, and informed plaintiffs of the decision.

On December 1, 2010, within seven days of mailing the notice, OneWest published in the Detroit Legal News a notification of plaintiffs' rights under Michigan law. Notice of foreclosure by advertisement was made by publication in the Detroit Legal News on March 16, March 23, March 30, and April 6, 2011.

On March 17, 2011, within 15 days after the first publication of the notice of foreclosure, notice by posting of the foreclosure was made on the property.

A sheriff's sale was held June 2, 2011 at which OneWest purchased the Property for $262,500.00, which amount became the redemption price. Because OneWest recorded the sheriff's deed within 20 days from the date of the foreclosure sale, the period of redemption expired December 2, 2011. Plaintiffs did not redeem the property prior to the expiration of the redemption period.

On November 28, 2011, plaintiffs filed a complaint in state court. OneWest timely removed the case to federal court on the grounds of diversity jurisdiction.

### III.  Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is

"not bound to accept as true a legal conclusion couched as a factual allegation." Aschcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). Here, the Court has considered documents relating to the mortgage and the foreclosure which are referenced in the complaint and central to plaintiff's claims.

## IV. Analysis

### A. Standing

OneWest first argues that all of plaintiffs' claims, to the extent they challenge defects in the foreclosure process, must be dismissed because plaintiffs lost standing to

assert any rights to or interest in the property when the six-month redemption period under M.C.L. § 600.3240(8) expired on December 2, 2011. OneWest is correct.

In order to properly allege a quiet title claim, plaintiffs must meet the requirements set forth in M.C.R. § 3.411, or, for a federal cause of action, 28 U.S.C. § 2409a(d). These rules require that the plaintiff properly allege his or her ownership interest in the property.[3] To establish standing, plaintiffs must "show that he . . . suffered an actual or imminent, concrete and particularized injury as a result of defendant's [actions], which injury likely would be redressed by a favorable decision." Am. Family Ass'n of Michigan v. Michigan State Univ. Bd. of Trs., 276 Mich. App. 42, 44 (2007).

Following foreclosure, the rights and obligations of the parties are governed by statute. Senters v. Ottawa Sav. Bank, FSB, 443 Mich. 45, 50-53 (1993). Upon expiration of the statutory redemption period, the purchaser of a sheriff's deed is vested with "all the right, title, and interest" in the property. See M.C.L. § 600.3236; Piotrowski v. State Land Office Bd., 302 Mich. 179, 187 (1942). Here, OneWest purchased the property at a foreclosure sale on June 2, 2011. The redemption period expired on December 2, 2011. Because plaintiffs failed to redeem the property before the redemption period expired, OneWest became vested with "all the right, title, and

---

[3] M.C.R. § 3.411(B) states, "(2) The complaint must allege, (a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." 28 U.S.C. § 2409a(d) states,"[t]he complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States."

interest" in the property by operation of law. At that point, plaintiffs, the former owners, lost standing to assert claims with respect to the property. See Overton v. Mortgage Electronic Registration Sys., Inc., No. 284950, 2009 WL 1507342, at * 1 (Mich. Ct. App. May 28, 2009) (unpublished opinion); see also Kama v. Wells Fargo Bank, No. 10-10514, 2010 WL 4386974, at *2 (E.D. Mich. Oct. 29, 2010); Smith v. Wells Fargo Home Mortgage, Inc., No. 09-13988 (E.D. Mich. August 16, 2010); Moriarty v. BNC Mortgage, et al, No. 1013860 (E.D. Mich. Dec. 15, 2010).

This outcome is not altered because plaintiffs filed this lawsuit on November 28, 2011, prior to the expiration of the redemption period. Overton, 2009 WL 1507342, at * 1 (holding that the plaintiff's filing of his lawsuit did not toll the redemption period and once that period expired, the plaintiff lacked standing to challenge the foreclosure proceedings). As the Michigan Court of Appeals explained in Overton:

> [P]laintiff was required to raise the arguments when foreclosure proceedings began. Plaintiff made no attempt to stay or otherwise challenge the foreclosure and redemption sale. Although he filed his suit before the redemption period expired, that was insufficient to toll the redemption period. "The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity." Schulthies v. Barron, 16 Mich. App. 246, 247-248, 167 N.W.2d 784 (1969). Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished. Piotrowski v. State Land Office Bd., 302 Mich. 179, 187, 4 N.W.2d 514 (1942); MCL 600.3236.

Id. In short, once the redemption period expired on December 2, 2011, plaintiffs lost standing to assert defects in the foreclosure proceedings and/or the sheriff's sale.

Plaintiffs, however, assert that they have standing because OneWest promised to modify plaintiffs' loan and/or delay the foreclosure process. Implicit in this argument is the notion that these alleged defect are irregularities sufficient to void the foreclosure

8

sale. Plaintiffs are mistaken.

"The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." United States v. Garno, 974 F. Supp. 628, 633 (E.D. Mich. 1997), citing Detroit Trust Co. v. Agozzinio, 280 Mich. 402, 405-06 (1937). Plaintiffs' vague assertions of fraud are not sufficient to state a claim to set aside the foreclosure. Overall, plaintiffs lack standing to challenge any defects in the foreclosure. However, as explained below, plaintiffs' fraud allegations will not carry the day.

### B. Plaintiff's Fraud Claims - Counts II, IV, V, VI, VII, VIII

#### 1. Statute of Frauds

In Counts II, and IV through VIII,[4] plaintiffs essentially allege that OneWest assured them that they could get a loan modification, and that their home would not be foreclosed on while they pursued a modification. OneWest says these claims are barred by the statute of frauds. The Court agrees.

In Michigan, certain types of agreements must be in writing before they can be

---

[4] While Counts II, VI, and VII, use the term "fraud," plaintiffs claims for quiet title under Count IV, for unjust enrichment under Count V, and for constructive trust under Count VIII, also stem from alleged fraudulent assurances that plaintiffs would get a loan modification. In their claim to quiet title, plaintiffs allege that OneWest improperly obtained title because they foreclosed on the property with the knowledge that plaintiffs were expecting to get a loan modification. Plaintiffs' claim for unjust enrichment is similar - the plaintiffs would be unjustly enriched if allowed to foreclose while plaintiffs were trying to enter into a loan modification. Plaintiffs' claim for constructive trust is likewise based on the allegations that plaintiffs were told they would get a loan modification. These claims are all variations on a theme - that plaintiff was promised they would get a loan modification and that their home would not be foreclosed on during that process. These varied claims seem to be exactly the kind of "creative pleading" that the bar on enforcing oral promises was meant to avoid.

enforced. Crown Technology Park v. D&N Bank, F.S.B., 242 Mich. App. 538, 548 (2000). The burden of proving an enforceable agreement is even heavier when claiming against a financial institution. Specifically, M.C.L. § 566.132(2) provides, in relevant part, that an action cannot be brought against a financial institution to enforce any "financial accommodation," unless the promise or commitment "is in writing and signed with an authorized signature by the financial institution." In Crown Technology, the plaintiff sued the bank to enforce an alleged unwritten promise by the bank to waive a prepayment penalty provision in the plaintiff's mortgage loan. The court of appeals held that section 132(2) barred the plaintiff's promissory estoppel claim, stating that section 32(2) "plainly states that a party is precluded from bringing a claim--no matter its label--against a financial institution to enforce the terms of an oral promise to waive a loan provision." Id. at 550. In reaching its conclusion, the court of appeals noted that its ruling extended beyond promissory estoppel claims, and that §132(2) barred all unwritten promises, regardless how such claims were labeled, explaining:

> However, as we noted above, the Legislature used the broadest possible language in M.C.L. § 566.132(2); M.S.A. 26.922(2) to protect financial institutions by not specifying the types of "actions" it prohibits, eliminating the possibility of creative pleading to avoid the ban.

Id. at 551.

The gravamen of all of plaintiffs' fraud claims is that OneWest assured plaintiffs that they would get a loan modification and that "during the Loan Modification process Defendant would not go forward with a sheriff sale so that plaintiffs would not lose their home." These alleged assurances were all verbal. M.C.L. 566.132(2) bars plaintiffs' fraud claims because plaintiffs have not alleged the existence of any documentary

evidence signed by an authorized representative of OneWest indicating that they would receive a financial accommodation in the form of a loan modification.[5] Because plaintiffs' fraud claims would require the Court to enforce alleged oral promises and representations in contravention of the statute of frauds, Counts II, IV, V, VI, VII, and VII fail to state plausible claims.

### 2. Failure to State a Claim

OneWest also argues that plaintiffs' fraud claims are subject to dismissal for failure to state a claim. The Court agrees.

Fed. R. Civ. P. 9(b). requires fraud to be plead with particularity. To meet the particularity requirements of Rule 9(b), the plaintiff must "specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank v. Dana Corp., 547 F.3d 564, 569-570 (6th Cir. 2008). These requirements have been interpreted to require that a plaintiff "allege the time, place, and content of the alleged misrepresentations on which [the plaintiff] relied; the fraudulent scheme, the fraudulent intent of the defendants and the injury resulting from the fraud." Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's pleadings must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ass'n of Cleveland

---

[5]Plaintiffs rely on a letter from OneWest that they term a loan modification agreement. The letter, however, gives proposed modification terms, but on its face states that it will not be binding on OneWest until the income is verified. At the point income is verified, OneWest would sign and return it. In any event, plaintiffs do not argue breach of this agreement, and do not present it as evidence that they had a signed writing from OneWest for any of the alleged promises.

11

Fire Firefighters, 502 F.3d at 548 (quoting Bell Atlantic, 127 S.Ct. at 1964-65).

In Count II, plaintiffs allege misrepresentation and/or fraud. To establish fraud under Michigan law, plaintiffs must demonstrate that "(1) defendant made a material representation; (2) the representation was false; (3) when defendant made the representation , the defendant knew it was false, or made it recklessly , without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) plaintiff acted in reliance upon it; and (6) plaintiff suffered damages." Cummins v. Robinson Twp, 283 Mich. App. 677, 695-96 (2009). Additionally, "a promise regarding the future cannot form the basis of a misrepresentation claim." Forge v. Smith, 458 Mich. 198, 212, 580 N.W.2d 876, 884 (1998).

In support of these claims, plaintiffs allege the following: "Defendant would advise Plaintiffs whether the qualified for a loan modification;" "Defendant would postpone the sheriff's sale until a decision was made on the loan modification;" "Plaintiff's file was legitimately under review;" "Defendant would evaluate Plaintiff's financial information and other document submissions to determine if he qualified for a loan modification;" "Defendant would notify Plaintiff if, when and why the loan modification was approved or denied."

First, the facts as plead do not show a material representation that was false. At best, OneWest reviewed plaintiffs' request for modification; it never indicated it would be granted. Additionally, it is not alleged that these statement were false, but rather plaintiffs allege they do not agree with OneWest's determination.

Second, plaintiffs have not meet the requirements for particularity. Plaintiffs have

not alleged any facts that put OneWest on notice as to who made the statements or when the statements were made. Count II therefore fails to state a claim upon which can be granted and will be dismissed.

In Count VI, Plaintiffs allege innocent/negligent misrepresentation. "A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party injures to the benefit of the party who made the representation." Unibar Maint. Serv., Inc. v. Saigh, 283 Mich. App. 609 (Mich. Ct. App. 2009). For innocent misrepresentation, a plaintiff need not show that the defendant had a fraudulent purpose or intent on the defendant's behalf, or even that the defendant knew the representation was false. Id. "A claim for negligent misrepresentation requires [a] plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."

Plaintiffs allege merely that "Defendant made innocent and/or negligent representations of material facts by promising or representing that Defendant would give a Loan Modification  so that Plaintiffs could remain in their home."

This is merely a rephrasing of the elements of these claims. Plaintiffs have failed to plead any actual facts as to the innocent or negligent misrepresentations made. Notably, plaintiffs have not identified a duty that OneWest owed to plaintiffs. There is authority that no such duty exists. See Yaldu v. Bank of America Corp., 700 F. Supp. 2d 832, 845 (E.D. Mich. 2010) (under Michigan law a "lender does not owe a duty of care to a loan applicant."). Additionally, plaintiffs have not meet the particularity requirement. Count VI must therefore be dismissed.

In Count VII, plaintiffs allege a claim of silent fraud. "In order to prove a claim of silent fraud, a plaintiff must show that some type of representation that was false or misleading was made and there was a legal or equitable duty of disclosure." M & D, Inc. v. W.B. McConkey, 241 Mich. App. 22 (Mich. Ct. App. 1998)

Plaintiffs have failed to meet the particularity requirements as outlined above, and plaintiffs have not plead facts that would support the element that OneWest had a legal or equitable duty to disclose any supposed misrepresentation. Count VII must be dismissed.

Finally, in addition to failing to meet the particularity requirements, plaintiffs' constructive trust claim under Count VIII fails to state a plausible claim because no independent cause of action for constructive trust exists; a constructive trust is merely a remedy. See Gaymar Indus., Inc. v. Firstmerit Bank, N.A., 311 F. App'x 814, 817 (6th Cir. 2009) (applying Ohio law) ("[T]here is no stand-alone claim for constructive trust instead it is a remedy…"); see also Brown-Smith v. Bank of America Corp., No. 10-14161, 2011 U.S. Dist. LEXIS 14446, *21 (E.D. Mich. Feb. 14, 2011) (collecting cases) ("A constructive trust is a remedy, not a cause of action").

### 3. Conclusion on Plaintiffs' Fraud Claims

Overall, plaintiffs' fraud claims under Counts II, IV, V, IV, VII, and VIII must be dismissed as barred by the statute of frauds and on the grounds that they otherwise fail to state a claim upon which relief may be granted. As such, plaintiffs have not put forth sufficient allegations of fraud to overcome or extend the expiration of the redemption

period and/or set aside the foreclosure.[6]

### C. Count III - "Deceptive Act and/or Unfair Practice."

OneWest says that plaintiffs' unfair trade practices claim under Count III fails to state a plausible claims. The Court agrees.

First, Michigan common law has no independent cause of action for a "deceptive act or unfair trade practices." Thus, OneWest assumed, as does the Court, that plaintiffs are alleging violations of the Michigan Consumer Protection Act (MCPA). Such a claim fails.

M.C.L. 445.904(1)(a) states that the MCPA does not apply to "a transaction or conduct specifically authorized under laws administered by as regulatory board or officer acting under statutory authority of this state of the United States." Michigan courts have held that residential lending activities of state and federal banks fall under this exception. See Newton v. Bank West, 262 Mich. App. 434, 441 (Mich. Ct. App 2004). ("Both Michigan courts and federal courts applying Michigan law have consistently held that the MCPA does not apply to claims arising out of residential mortgage loan transactions.")

Although, the complaint did not specify the "deceptive acts/unfair trade practices" plaintiffs argue in their response that such acts are contained in the Michigan Consumer Protection Act (MCMPA) and the Federal Trade Commission Act (FTCA.) However, the complaint does not allege any violation of law on the part of OneWest or

---

[6]The Court declines to address OneWest's argument that plaintiffs' state law fraud claims based on a failure to provide a loan modification must be dismissed on the grounds that they are preempted by the National Bank Act, 12 U.S.C. § 1 et seq.

15

specify any such facts.  The complaint states only that documents "may" have been signed contrary to state law and that such practices "may" constitute a deceptive act.  Use of the word "may" suggests merely speculation that the OneWest violated the law.  This does not raise a right to relief above a speculative level, and does not state a claim that is plausible on its face.  Count III does state a plausible claim upon which relief may be granted.

### D.  Count I - Violation of M.C.L § 660.3205a.

Finally, OneWest argues that Count I should be dismissed.  In Count I, plaintiffs claim a violation of Michigan's loan modification statutes, M.C.L. 600.3205a, et seq.[7]  First, these statutes merely require a lender to consider a borrower for a loan modification prior to commencing foreclosure by advertisement.  See M.C.L. 600.3205c.  These statutes do not require a lender to modify a loan, nor do they give a plaintiff a cause of action for damages.  See also Adams v. Wells Fargo Bank, N.A., No. 11–10150, 2011 WL 3500990, at * 4 (E.D. Mich. Aug. 10, 2011) (unpublished).  Second, a failure to comply with these statutes would not invalidate a Sheriff's sale.  The statutes include a specific enforcement mechanism that provides the borrowers with an

---

[7]In their response, plaintiffs attempt to raise a new claim that OneWest violated M.C.L. § 600.3204.  Response, p. 14 ("The redemption period never began and thus could not have expired" because plaintiffs allegedly requested a meeting and OneWest allegedly refused to meet or negotiate).  A claim based on a violation of M.C.L. § 600.3204 will not be considered because it was not asserted in the complaint and any request to amend the complaint to assert such a claim would be futile.  Plaintiffs' argument that the "period of redemption never began" is not supported by any legal authority and is merely a conclusion of law.  Furthermore, the documents, including plaintiffs' own exhibits, belie their assertions, as OneWest continuously communicated with and engaged in the modification process with plaintiffs beginning in July 2009, and throughout the foreclosure process.

opportunity to request judicial foreclosure if the foreclosing party does not comply with the loan modification provisions. M.C.L. § 600.3205c(8). However, plaintiffs have not requested a judicial foreclosure. Unless the borrower files a complaint seeking such relief, which plaintiffs have not done, nothing prevents the lender from foreclosing. Id.

As one district court recently explained:

> This provision [600.3205c] allows a mortgagor to file an action to convert a foreclosure by advertisement into a judicial foreclosure. The remedy available to the Steins under this provision-assuming arguendo that they were eligible for it-was one that they were required to specifically seek out prior to the consummation of the foreclosure by advertisement. The provision allows certain borrowers to determine the type of foreclosure proceeding, not to avoid foreclosure altogether or set aside an already-completed foreclosure. Moreover, there is no evidence that the Steins availed themselves of this provision while they retained title, rights, or an interest in the property. Their failure to do so cannot constitute the type of fraud, accident, or mistake that would be required to set aside the foreclosure.

Stein v. U.S. Bancorp., 10-14026, 2011 WL 740537, *10 (E.D. Mich. Feb. 24, 2011)

Additionally, plaintiffs have not alleged facts showing that they qualified for a loan modification under M.C.L. 600.3205a, et seq. Instead, plaintiffs offer the conclusory statement that they qualified for a modification, without offering any facts showing why they believe they qualified. This is insufficient to state a claim for relief. See Iqbal, 129 S. Ct. at 1949.

Plaintiffs' complaint asks for an order to rescind the foreclosure sale, but does not state the authority under which the Court would be able to accomplish this. The only source of authority plaintiffs point to is the statute itself. However, as explained above, the relief the statute gives is to convert the foreclosure by advertisement, not avoid it completely. Therefore, Count I fails to state a plausible claim for relief.

### V. Conclusion

For the reasons stated above, plaintiffs have not stated a plausible claim for relief as to any of their claims against OneWest relating to defects in their mortgage and the foreclosure proceedings. Accordingly, OneWest's motion to dismiss is GRANTED. This case is DISMISSED.

SO ORDERED.

  S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: March 14, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 14, 2012, by electronic and/or ordinary mail.

  S/Julie Owens
Case Manager, (313) 234-5160